UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DYANE V. SMITH, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:11-CV-01996 (VLB) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |
| | : | |
| _____ | : | |
| | : | |
| | : | |
| UNITED STATES O F AMERICA, | : | |
| Counterclaim Plaintiff, | : | |
| | : | March 7, 2014 |
| v. | : | |
| | : | |
| DAVID R. SMITH, DYANE V. SMITH, | : | |
| ARGENT MORTGAGE COMPANY, LLC, | : | |
| JOWDY AND JOWDY, and TOWN OF | : | |
| REDDING, | : | |
| Counterclaim Defendants. | : | |

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S [DKT. 47] MOTION FOR SUMMARY JUDGMENT AND GRANTING IN
PART AND DENYING IN PART DEFENDANT'S [DKT. 48]
CROSS-MOTION FOR SUMMARY JUDGMENT**

I.      **Introduction**

The Plaintiff and Counterclaim Defendant, Dyane V. Smith (hereinafter the

"Plaintiff"), filed an action to quiet title against the Defendant and Counterclaim

Plaintiff, the United States of America (hereinafter the "Defendant"), pursuant to

26 U.S.C. § 2409(a) and Conn. Gen. Stat. § 47-31 and to remove a federal tax lien

1

on property located at 24 Ridgewood Drive in Redding, Connecticut (the "Property"). The Defendant counterclaimed to foreclose on the Property. The Plaintiff moved for summary judgment pursuant to Fed. R. Civ. P. 56(a), and the Defendant cross-moved for summary judgment pursuant to Fed. R. Civ. P. 56(a). For the reasons that follow, the Plaintiff's motion for summary judgment in GRANTED IN PART and DENIED IN PART, and the Defendant's cross-motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## II.    Background

The Plaintiff is a natural person residing in Redding, Connecticut. [Dkt. 47-6, Local Rule 56(A)(1) Statement in Support of Plaintiff's Motion for Summary Judgment, ¶ 1; Dkt. 48-6, Local Rule 56(a)(2) Statement, Response to Plaintiff's Local Rule 56(a)(1) Statement, ¶ 1]. The Defendant is the Government of the United States of America, acting through its agency, the Internal Revenue Service. [Dkt. 47-6, ¶ 2; Dkt. 48-6, ¶ 2]. On June 2, 1993, the Plaintiff and the Counterclaim Defendant David R. Smith ("Smith"), the Plaintiff's ex-husband, acquired title to the Property by warranty deed recorded on the Redding land records on July 28, 1993 in volume 178, pages 250-251. [Dkt. 47-6, ¶ 4; Dkt. 48-6, ¶ 4].

However, on January 1, 2000, Smith moved out of the residence and began residing at 84 North Salem Drive, Ridgefield, Connecticut, taking with him his financial records as well. [Dkt. 47-2, Plaintiff's Affidavit, ¶ 7]. On January 12, 2001, Smith initiated a contested dissolution of marriage in the Danbury Superior Court in Connecticut. [Dkt. 47-6, ¶ 5; Dkt. 48-6, ¶ 5]. From the commencement of

2

the divorce proceeding, Smith filed his income taxes as "married, filing separately," including income tax returns due to be filed in 2001, 2002, and 2003. [Dkt. 47-6, ¶¶ 6, 8; Dkt. 48-6, ¶ 6].  Unbeknown to the Plaintiff, Smith did not file a timely tax return for 2000 or 2001; instead, he filed those returns on February 2, 2003 on a form 4340 for 1040 taxes.  [Dkt. 48-6, ¶ 6; Dkt. 48-4, Defendant's Exhibit 1, Form 4340 for David R. Smith for 1040 taxes the tax period ended December 31, 2000; Dkt. 48-5, Defendant's Exhibit 2, Form 4340 for David R. Smith for 1040 taxes the tax period ended December 31, 2001].

In early August 2001, while the divorce action was still pending, a lis pendens was recorded by the Plaintiff on the Property pursuant to Connecticut law and recorded in the Redding land records in volume 251, pages 949-950.  [Dkt. 47-6, ¶ 7; Dkt. 48-6, ¶ 7].  On March 3, 2003, a delegate of the Secretary of the Treasury made an assessment against Smith for 1040 taxes for the tax period ending December 31, 2000 in the amount of $95,304, and on March 10, 2003 another assessment was made for the tax period ending December 31, 2001 in the amount of $32,970.  [Dkt. 47-6, ¶ 9; Dkt. 48-6; ¶ 9; Dkt. 48-4; Dkt. 48-5].

On July 15, 2003, the Regional Family Trial Court issued a Judgment of Dissolution after a full hearing, dissolving the marriage of the Plaintiff and Smith. [Dkt. 47-6, ¶ 11; Dkt. 48-6, ¶ 11; Dkt. 47-8, Plaintiff's Exhibit 4].  Article 10 of the Memorandum of Decision related to the dissolution judgment stated: "[b]y judicial decree, [Smith's] interest in the [Property] shall be transferred to the [Plaintiff], and she shall be responsible for the first mortgage.  She shall hold [Smith] harmless and indemnified of the same.  [The Plaintiff] shall be

3

responsible for recording a certified copy of the dissolution of marriage judgment on the Redding Land Records." [Dkt. 47-8, p. 41, ¶ 10]. Article 11 stated that Smith "is ordered to pay" $125,000 towards the Plaintiff's legal fees and $65,500 for their minor child's legal fees "due to his repeated contempt of court, the total lack of credibility of his testimony regarding the couple's finances, his manipulation of family assets to put them beyond the reach of the court, his repeated failures to comply with requests for the production of financial documents, and his deliberate and intentional violation of the automatic orders that prohibit the creation of debt during the course of dissolution proceedings." [*Id.* at p. 42, ¶ 11(a) and (c)]. The same article also provides that Smith "borrowed against the 401K in the amount of $50,000. He has also paid his mother $60,000, all without court order." [*Id.* at p. 42, ¶ 11]. Finally, Article 13 provided that

> [the Plaintiff] shall be only responsible for those liabilities as reflected on her financial affidavit in her name solely. [Smith] shall be responsible for all debts on his financial affidavit, as well as all debts in his name for which he could be liable, which are not yet reflected as debts on his financial affidavit, particularly those pertaining to taxes. [Smith] shall hold [the Plaintiff] indemnified and harmless for the debts the court has ordered him liable. This provision is in lieu of additional spousal support and is intended to be non-dischargeable in bankruptcy.

[*Id.* at p. 45, ¶ 13]. Accordingly, on August 14, 2003, a certified order by the Superior Court conveying all rights and interests in the Property to the Plaintiff was issued pursuant to Conn. Gen. Stat. § 46b-81(a), and was received for record by the Town of Redding on August 20, 2003 and recorded in the land records in volume 294, page 72. [Dkt. 47-8, Plaintiff's Exhibit 5, Certified Order]. By August

4

20, 2003, the Plaintiff received no notice of the assessments made against Smith or the existence of any lien, nor did she receive a certificate of delinquency. [Dkt. 47-2, ¶ 22]. Accordingly, the Plaintiff did not appeal the judgment in her divorce action. [*Id.* at ¶ 18].

On September 15, 2003, a Notice of Federal Tax Lien was recorded on the Redding land records in volume 296, page 211, against Smith in the amounts of $49,789.92 and $13,508.96 for the tax years 2000 and 2001, respectively, for a total of $63,298.88. [Dkt. 47-4, Plaintiff's Exhibit 6, Notice of Federal Tax Lien]. The notice also lists Smith's residence as 84 N. Salem Rd., Ridgefield, CT 06877, not at the Property. [*Id.*].

On January 21, 2005, the Plaintiff entered into a mortgage contract with Argent Mortgage Company, LLC ("Argent"), in the principal amount of $359,200, and on January 26, 2005, a Commitment of Title Insurance letter was issued by Connecticut Attorneys Title Insurance Company ("CATIC") to the insured and Argent evidencing clear title to the property. [Dkt. 47-4, Plaintiff's Exhibit 7]. On January 26, 2005, the Argent mortgage was recorded on the Redding land records. [Dkt. 47-6, ¶ 20; Dkt. 48-6, ¶ 20].

The Plaintiff avers that she only became aware of the existence of the lien in July 2009 when she conducted a title search for the Property as study practice for the bar exam. [Dkt. 47-2, ¶ 25]. Yet, on March 12, 2009, CATIC reissued a Commitment for Title Insurance, which included in an attached schedule, the details of the federal tax lien on the Property. [Dkt. 47-4, Plaintiff's Exhibit 9, Commitment for Title Insurance Letter]. The Plaintiff avers that this letter was in

5

response to her concern that a lien existed on the Property.  She alleges that after discovering the lien, she contacted CATIC and First American Title Insurers to question them regarding the lien, but that both assured her that she had clear title to the Property and that the federal lien did not attach to the Property under Connecticut law.  [Dkt. 47-2, ¶¶ 25-26].

Nearly two years later on May 9, 2011, John R. Mikalchus, an IRS staff Attorney wrote an internal memorandum to Donald Angotta, Revenue Officer, regarding whether "a transferee notice of federal tax lien should be filed against property that was transferred to the taxpayer's ex-wife pursuant to the divorce decree." [Dkt. 47-3, Plaintiff's Exhibit 10, IRS Memorandum].  The memorandum cites the relevant history discussed above and also states that "[o]n January 21, 2005, Dyane refinanced the property for $359,200 with Argent Mortgage recording a lien on the property.  Dyane's closing attorney informed her that the Connecticut Attorneys Title Insurance Company issued a title insurance policy on the property to the lender indicating that the title was clear."  [*Id.*].  "On May 5, 2010, Mortgagesmith, LLC conveyed the property back to Dyane.  Property records indicate that [the Property] has been appraised at $759,200, while www.zillow.com estimates the value at $573,000.  In the meantime, the IRS has placed David into currently not collectible status."  [*Id.*].  The memorandum goes on to state that "[t]he revenue officer has determined that, at the time of the transfer, the property was worth approximately $517,000 . . . [and t]he revenue officer has examined all liens recorded against the property and determined that the only encumbrance was a mortgage recorded on April 28, 1997 by Savings Institute bank & Trust in

6

the amount of $380,000." [*Id.*].  In a footnote to the provision related to the mortgage amount, the memorandum states that "[w]ith six years of payments on this mortgage, the balance would presumably have been reduced to less than $380,000 at the time of the transfer.  A decision was made not to issue a summons for the exact balance at the time of the transfer due to the likelihood that this would trigger litigation involving a petition to quash by either David Smith or Dyane Smith." [*Id.*].  Even though the legal analysis in the memorandum found that the federal lien attached to the Property before the transfer, it ultimately recommended that

> the present notice of federal tax lien filed in David's name does not provide sufficient notice to third parties of the IRS lien attached to the property.  As a result, we recommend that a notice of transferee lien be filed with respect to the property with the following language on the notice next to the "Name of Taxpayer" . . . "Dyane V. Smith, transferee and/or nominee of David R Smith.". . . Under the list of the tax liabilities, the lien should also state . . . "This lien attaches to the property located at 24 Ridgewood Drive, Redding, Connecticut."

[*Id.*].  However, this recommendation is tempered by the later legal conclusion that the Internal Revenue Code only requires that notice be provided to the liable taxpayer, here David Smith.  [*Id.*].

   After receipt of this memorandum, on July 1, 2011, a letter signed by Angotta was issued, claiming that the Plaintiff is the nominee or alter ego of Smith.  [Dkt. 47-6, ¶ 25; Dkt. 48-6, ¶ 25].  On June 13, 2011, a Notice of Federal Tax Lien was recorded in the Redding land records against the Plaintiff as "transferee and/or nominee of David R. Smith" in the amount of $20,849.41 for tax year 2000 and $15,541.33 for tax year 2001, totaling $36,390.74, but the notice erroneously lists

7

the Plaintiff's residence as "84 North Salem Rd., Ridgefield, Connecticut" and contains no language stating that the lien attaches to the Property.  [Dkt. 47-6, ¶ 2[6]; Dkt. 48-6, ¶ 26].  On July 28, 2011, the Plaintiff, through counsel, submitted a Request for Collection Due Process Appeal to the IRS.  [Dkt. 47-6, ¶ 2[7]; Dkt. 48-6, ¶ 27].  The Plaintiff avers that since 2000, she has had sole ownership of the Property and has resided there with her son.  [Dkt. 47-2, ¶ 3].  She also avers that she maintains her home law office out of the Property and has made investments to the Property of over $300,750.00, based on her monthly mortgage payments, not including expenditures for improvements.  [*Id.* at ¶¶ 5, 28].

Subsequent to that administrative appeal, the Plaintiff filed the present action against the Defendant.  The Defendant counterclaimed against the Plaintiff and cross-claimed against Smith, Argent, Jowdy and Jowdy, and the Town of Redding.  Default entry pursuant to Fed. R. Civ. P. 55(a) and default judgment pursuant to Fed. R. Civ. P. 55(b) were entered against Smith in the amount of $66,987.63, plus interest and other statutory accruals after October 24, 2012. [Dkt. 27].  The Town of Redding, having pled that it had no interest in the Property as all municipal taxes have been paid, was excused from the case.  [Dkt. 35].  The Defendant further moved for an entry of judgment pursuant to Fed. R. Civ. P. 54(b) as to Smith so that it could "engage in post-judgment discovery against Mr. Smith in order to determine if there are alternative sources of collection of the judgment other than the potential judicial sale of the real property which is the subject of ongoing litigation concerning plaintiff's quiet title action." [Dkt. 37]. That motion was denied without prejudice to refiling, however, due to a

8

scrivener's error in the Defendant's motion and proposed order, but the Defendant never refiled its request for an entry of judgment.  [Dkt. 44].  These motions for summary judgment followed.

### III.    Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).  "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (citation and internal quotation marks omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.  At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to

**9**

back them up, are not sufficient."  *Welch–Rubin v. Sandals Corp.,* No.

3:03cv481(MRK), 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal

quotation marks and citations omitted); *Martinez v. Connecticut*, No.

3:09cv1341(VLB), 2011 WL 4396704, at *6 (D. Conn. Sept. 21, 2011).  Where there

is no evidence upon which a jury could properly proceed to find a verdict for the

party producing it and upon whom the onus of proof is imposed, such as where

the evidence offered consists of conclusory assertions without further support in

the record, summary judgment may lie.  *Fincher v. Depository Trust and

Clearance Co.,* 604 F.3d 712, 720 (2d Cir. 2010).

### A.  Due Process

The Plaintiff first argues that she was denied her due process rights as

protected by the Fifth Amendment because she was never given notice of the

existence of the lien prior to entry of the divorce judgment.  [Dkt. 47-1, Plaintiff

and Counterclaim Defendant's Memorandum in Support of her Motion for

Summary Judgment, p. 3-4].  The Defendant argues that it gave the requisite

notice to Smith and that it was not required to provide another notice.  [Dkt. 48-1,

Defendant and Counterclaim Plaintiff United States of America's Cross-motion for

Summary Judgment, p. 16-17].

The Fifth Amendment of the United States Constitution requires that no

person "be deprived of life, liberty, or property, without due process of law . . . ."

U.S. Const. amend. V  The statutory notice requirement related to tax

assessments states that the Secretary shall, "as soon as practicable, and within

60 days, after the making of an assessment of a tax pursuant to section 6203,

**10**

give notice to each person liable for the unpaid tax, stating the amount and demanding payment therefor.  Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address."  26 U.S.C. § 6303(a).  Furthermore, "[n]o levy may be made on any property or right of any person unless the Secretary has notified such person in writing of their right to a hearing under this section before such levy is made.  Such notice shall be required only once for the taxable period to which the unpaid tax" relates.  26 U.S.C. § 6330(a)(1).  Finally, to effectuate a lien "[i]n the case of real property," the lien shall be filed "in one office within the State . . . as designated by the laws of such State, in which the property subject to the lien is situated."  26 U.S.C. § 6323(f)(1)(A)(i).  Under Connecticut law, "[n]otices of liens upon real property for taxes payable to the United States and notices of liens upon real property for costs and damages payable to the United States, and certificates and notices affecting such liens shall be filed in the office of the clerk of the town in which the real property subject to a federal tax lien or other federal lien is situated."  Conn. Gen. Stat. § 49-32a.  Pursuant to these statutes, the IRS is only statutorily required to provide notice to the person liable for the tax once during a taxable period and must file any lien on real property in Connecticut in the office of the clerk of the town in which the property sits.

Here, notice was only statutorily required to be given to Smith as he was the liable taxpayer.  The Plaintiff's argument that the IRS violated her due process rights by not providing her notice as a non-liable third party before the transfer of the Property does not stem from any statutory obligation.  The Plaintiff,

**11**

furthermore, cites no authority for her position.  In fact, her only support for her claim is the IRS Memorandum, which recommended providing third parties with notice of the lien.  Even though the Memorandum stated "the present notice of federal tax lien filed in David's name does not provide sufficient notice to third parties of the IRS lien attached to the property," it goes on to state that "the only person entitled to notice in the present case is David, since he is the only one liable for the tax."  [Dkt. 47-3].  Therefore, the Plaintiff does not have standing to allege that she received improper notice in violation of her due process rights because she was not the party that was liable for the tax.  Indeed, the lien that attached to the Property did not attach to any interest held by the Plaintiff, it attached to Smith's property interest that was subsequently transferred to the Plaintiff.

Aside from statutory due process, courts have also held that constitutional due process is protected when a property owner has the ability to contest and challenge the validity of the lien at some point before a foreclosure or levy action. In *Myers v. United States*, the Fifth Circuit held that the third-party transferee's due process rights were not violated when the transferee had the ability to contest the validity of the levy, even though he did not have the ability to contest the underlying assessment of the tax liability placed on the first owner.  *Myers v. United States*, 647 F.2d 591, 603-604 (5th Cir. 1981); *see also In re Wren Alexander Invs., LLC*, No. 08-52914(RBK), 2011 WL 748131, at *4-5 (Bankr. W.D. Tex. Feb. 23, 2011) (no due process problems when post-transfer IRS procedures allow the new property owner to contest the validity of the lien even though the owner

could not contest the amount of the assessment), *aff'd sub nom.*, 530 F. App'x 302 (5th Cir. 2013).

The Sixth Circuit also quickly dismissed the contention that "due process requires a hearing prior to the imposition of a nominee tax lien" as being "clearly foreclosed by nearly 100 years of precedent holding that the 'pay first, sue later' principle embodied in the Internal Revenue Code is constitutional." *Morris v. United States*, 540 F. App'x 477, 479 (6th Cir. 2013) (citing *Dodge v. Osborn*, 240 U.S. 118, 122 (1916); *Phillips v. Comm'r of Internal Revenue*, 283 U.S. 589, 595 (1931); *Bob Jones Univ. v. Simon*, 416 U.S. 725, 746-48 (1974); *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 352 n.18 (1977)).  In so holding, the court was referencing the decision from the district court in which the district court stated the "imposition of a federal tax lien without prior notice or process does not violate the Fifth Amendment." *Morris v. United States*, 889 F. Supp. 2d 1010, 1012 (N.D. Ohio 2012), *vacated on other grounds*, 540 F. App'x 477.  Therefore, as these authorities make clear, the Plaintiff's due process rights were protected as long as she was able to challenge the validity of the lien.  Since the Plaintiff's property was not foreclosed and will not be until a judgment of this Court is issued, her due process rights have been protected.

Furthermore, the Plaintiff cannot argue that she was denied due process because she was not given sufficient notice of the lien.  She was given notice of the lien in July 2011, well before any foreclosure action commenced, and "[a]ctual notice of the commencement of the proceeding is all due process require[s]." *Weigner v. City of New York*, 668 F. Supp. 135, 138 (E.D.N.Y. 1987), *aff'd*, 852 F.2d

**13**

646 (2d Cir. 1988).  Given the 2011 notice, she was permitted to file an administrative appeal with the IRS and has now been able to file this quiet title action.  While the imposition of the lien was an inconvenience, its existence did not create or deprive the Plaintiff of any property interest, only a final judgment of this Court as related to the foreclosure action can do that.  Therefore, there has not yet been a deprivation of property.  It appears that the Plaintiff's due process argument is really that she "waived her fundamental due process right to appeal the [divorce judgment] because she lacked notice that this 'secret' creditor would someday come knocking at her door."  [Dkt. 51, Plaintiff's Memorandum in Opposition to Defendant's Cross Motion for Summary Judgment, p. 15].  However, the Fifth Amendment protects the deprivation of property without the due process of law.  An appeal from a divorce decree is not a property right, and, therefore, the Fifth Amendment is really inapplicable to the Plaintiff's argument.  Moreover, nothing prevented the Plaintiff from appealing the divorce judgment; she merely chose not to.  Accordingly, the Court finds that the Defendant gave the notice as required under the relevant statutes, and the Plaintiff's constitutional due process rights have been protected because no deprivation of any property right has occurred and will not occur until after this Court renders a judgment in this action.

### B.  The Validity of the 2003 Lien

The Plaintiff next argues that the 2003 lien was invalid because Smith had no identifiable interest in the Property at the time the assessments were made because the Property was conveyed to her before the tax lien was recorded in the

**14**

Redding land records, and the lis pendens, filed in 2001, was effective from that date given the divorce decree.  [Dkt. 47-1, p. 4-10].  The Defendant argues that the lis pendens was inchoate until judgment was entered in the divorce action, so Smith's property interest was not dissolved until July 2003.  [Dkt. 48-1, p. 19-20].

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  26 U.S.C. § 6321.  Furthermore, "[u]nless another date is specifically fixed by law, the lien imposed . . . shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied."  26 U.S.C. § 6322; *United States v. McCombs*, 30 F.3d 310, 321 (2d Cir. 1994) ("A lien imposed pursuant to section 6321, moreover, is deemed to arise at the time that the assessment is made and continues until the amount of liability set forth in the assessment is satisfied.").  Here, a federal tax was assessed against Smith on March 3, 2003 and March 10, 2003 for the taxes owed for the 2000 and 2001 taxable years respectively.  Pursuant to the statute, the lien attached to Smith's interest in the Property at the date of those assessments.

However, the imposition of a tax lien must be limited to the actual property interest of the taxpayer then existing because a federal tax lien itself "creates no property rights but merely attaches consequences, federally defined, to rights created under state law."  *United States v. Bess*, 357 U.S. 51, 55 (1958).  Therefore, the question as to whether Smith had an interest in the Property on March 3, 2003 and March 10, 2003 is determined by looking to Connecticut state

15

law.  *See Aquilino v. United States*, 636 U.S. 509, 512-513 (1960); *United States v. 110-118 Riverside Tenants Corp.*, 886 F.2d 514, 518-19 (2d Cir. 1989) ("Whether Broady had a property interest when the Government filed its lien is a question of state law.").

The Plaintiff and Smith acquired the Property by warranty deed on July 28, 1993 and held such property until title was conveyed to the Plaintiff by the divorce judgment dated July 15, 2003.  The judgment was further recorded at the Office of the Town Clerk in Redding on August 20, 2003.  Therefore, it appears that Smith had an interest in the Property until July 15, 2003.  However, the tax assessments occurred in March 2003 and were recorded in September of that year.  "A federal tax lien, described as a 'secret lien' . . . is effective upon assessment against all persons, even in the absence of recordation of the lien." *Don King Prod., Inc. v. Thomas*, 945 F.2d 529, 533 (2d Cir. 1991) (citing *United States v. Sec. Trust & Sav. Bank of San Diego*, 340 U.S. 47, 53 (1950) (Jackson, J., concurring); *Rice Inv. Co. v. United States*, 625 F.2d 565, 568 (5th Cir. 1980)); *see also United States v. Vermont*, 377 U.S. 351, 355 (1964) ("The federal tax liens are general and, in the sense above indicated, perfected." (citations and internal quotation marks omitted)).  Therefore, it is clear that if Smith had an interest in the Property, the lien would have attached to that interest in March 2003, well before the judgment in the divorce action was issued and the lien was actually recorded.

The Plaintiff argues that the lis pendens filed in 2001 worked to prevent the imposition of the lien because the ultimate divorce judgment relates back to the

16

lis pendens and gives effect to its terms the date it was filed.  Indeed, lis pendens are an important component of divorce proceedings because, as the Plaintiff correctly points out, they provide notice to all other third parties that obtaining an interest in any property on which a lis pendens notice is made is done at the third party's own "peril."  *Ghent v. Meadowhaven Condo., Inc.*, 77 Conn. App. 276, 284 (Conn. App. 2003).  However, "[g]enerally, a notice of lis pendens is simply a notice that, when properly recorded, warns third parties, such as prospective purchasers, that the title to the property is in litigation."  *Id.* "Clearly the placing of a notice of lis pendens on the land records does not deprive the property owner of his right to occupy and use the land in question.  Just as clearly, however, a notice of lis pendens does interfere with an owner's right to sell or mortgage his real estate.  *Kukanskis v. Griffith*, 180 Conn. 501, 509 (1980).  Yet,

> [w]hile the notice may have an effect on the defendant's ability to alienate the property, the defendant is not prevented from doing so.  As Chief Justice Rehnquist noted, "[T]he filing of such notice will have an effect upon the defendant's ability to alienate the property, or to obtain additional security on the basis of title to the property, but the effect of the lis pendens is simply to give notice to the world of the remedy being sought in the lawsuit itself.  The lis pendens itself creates no additional right in the property on the part of the plaintiff, but simply allows third parties to know that a lawsuit is pending in which the plaintiff is seeking to establish such a right."

*Wallingford Staffordshire Commons Ass'n, Inc. v. Staffordshire Assocs.*, 42 Conn. Supp. 241, 249-50, 615 A.2d 188, 193 (Conn. Sup. Ct. 1992) (quoting *Connecticut v. Doehr*, 501 U.S. 1, 29 (1991) (Rehnquist, C.J., concurring)).  Therefore, the

17

reason that the third party operates at his own "peril" is because the property interest may or may not be later defined to negatively affect his purchase.

The United States Supreme Court has consistently held that under federal law, the rights established by a lis pendens, even though they may relate back to the date of the filing, are not perfected until the date of judgment.  For example, in *United States v. Sec. Trust & Sav. Bank*, the Court noted that

> [t]he attachment lien gives the attachment creditor no right to proceed against the property unless he gets judgment within three years or within such extension as the statute provides.  Numerous contingencies might arise the [sic] would prevent the attachment lien from ever becoming perfected by a judgment awarded and recorded.  Thus the attachment lien is contingent or inchoate—merely a lis pendens notice that a right to perfect a lien exists.

*Sec. Trust & Sav. Bank of San Diego*, 340 U.S. at 50; *United States v. Vermont*, 377 U.S. at 351 (repeating the same).  The Supreme Court of Connecticut has also agreed in stating that "the filing of the state's liens pursuant § 17-82c did not create liens that were, in advance of foreclosure proceedings, choate as a matter of federal law.  Such liens amounted to no more than 'a lis pendens notice that a right to perfect a lien exists.' . . . Because the state's liens were still inchoate according to federal law at the time when the federal tax liens arose, the federal liens were entitled to priority in this case." *Danbury Sav. & Loan Ass'n, Inc. v. Delaney*, 207 Conn. 743, 754-55 (1988).

Accordingly, the lis pendens, when filed, was inchoate as a matter of federal law because it only served as a notice that a right to the Property might at some future point be redefined.  While third parties may be liable for damages if

18

acquiring the property after the notice has been filed, no definite change in property interest occurs until the date of judgment.  Since the lis pendens was not perfected, it cannot defeat a federal tax lien that attached after the date of the notice but before the date of the judgment which rendered the lis pendens "choate."  *See U.S. v. 110-118 Riverside Tenants Corp.*, 886 F.2d 514, 518 (2d Cir. 1989) (for a state lien to take priority over a federal lien, the state lien must have been perfected).  Here, the Plaintiff filed the notice of lis pendens in 2001, well before the tax assessments in March 2003, but that notice was not perfected until the judgment in the divorce action was entered in July 2003.  Therefore, Smith had an interest in the Property at the time of the tax assessments, and the lien attached immediately because federal tax liens are perfected at the time of assessment.  The filing of the lis pendens notice did not affect the validity of the federal lien or Smith's interest in the Property.

Even so, the Plaintiff argues that several Supreme Court precedents support her contention that Connecticut's law on lis pendens should prevent the application of the federal superiority rule.  For example, she cites *Comm'r v. Stern*, in which the Supreme Court held that a widow beneficiary of her deceased husband's insurance policy was not liable for his unpaid income tax deficiencies because state statutes determining liability governed the issue, and Kentucky law, which was applicable to the case, imposed no liability upon the beneficiary of a decedent's life insurance policy to the insured's creditors absent a finding of fraud.  *Comm'r v. Stern*, 357 U.S. 39, 46-47 (1958).  This case is not really related to the issue before this Court.  In *Stern*, the Court was interpreting the

**19**

applicability of a procedural collection statute when no federal tax liability was actually imposed against the beneficiary.  *Id.* at 47.  The Court specifically stated that "[w]e agree that state law may not destroy a tax lien which has attached in the insured's lifetime."  *Id.*  Here, we are looking to Connecticut law only to determine the nature of Smith's interest in the Property at the time of the assessments.  Since the "tax collector steps into the taxpayer's shoes," the only question here is whether at that point, Smith had any interest in the Property.  *United States v. Gibbons*, 71 F.3d 1496, 1501 (10th Cir. 1995).  Since we found that his property interest existed until July 2003, the lien attached to his share of the Property before conveyance of that interest to the Plaintiff.

Finally, the Plaintiff argues that if this Court were to permit the enforcement of the lien even though the Superior Court was unaware of its existence, we would be permitting federal law to redefine the distribution of marital property rights in a dissolution action, a domain exclusive preserved for the states.  [Dkt. 47-1, p. 7-10].  The Plaintiff argues that the divorce judgment, which was rendered by the state without notice of the existing federal tax lien, would be attacked by enforcement of the lien because the state court was unable to weigh properly that liability in determining how to divide the marital assets.  The Defendant does not contest that the State of Connecticut has the power to determine property rights with respect to the dissolution of marriages.  Furthermore, it does not contest that the divorce judgment is a valid exercise of state law, and the conveyance of the property in July 2003 operated to divest any interest in the Property held by Smith as of that date.

**20**

Before addressing the legal merits of the Plaintiff's position, it is not clear from the record that the state court failed to consider the possibility of a secret tax lien when dividing the marital estate.  The judgment states that Smith was required to pay legal fees due to his "repeated contempt of court, the total lack of credibility of his testimony regarding the couple's finances, his manipulation of family assets to put them beyond the reach of the court, his repeated failures to comply with requests for the production of financial documents, and his deliberate and intentional violation of the automatic orders that prohibit the creation of debt during the course of dissolution proceedings."  [Dkt. 47-8, ¶ 11a]. Moreover, the decree stated "[Smith] shall be responsible for all debts on his financial affidavit, as well as all debts in his name for which he could be liable, which are not yet reflected as debts on his financial affidavit, particularly those pertaining to taxes."  [*Id.* at p. 45, ¶ 13].  Clearly, the judge was aware of the possibility that there could be unknown tax and other liabilities. While, the Plaintiff accurately states that the divorce judgment was crafted without notice of this particular lien, Smith's unethical behavior put the judge on notice of that exact possibility.

As related to the legal merits, the Plaintiff cites two authorities from neighboring circuits as support for her position that the conveyance of Smith's interest in the property related back to the date her divorce proceeding was filed. In *Gardner v. United States*, the Tenth Circuit denied imposition of a federal tax lien when the assessment was made after the filing of the divorce action. *Gardner v. United States*, 34 F.3d 985,988-89 (10th Cir. 1994).  However, the court

**21**

relied on a Kansas-specific approach to property rights in divorce actions, which are deemed "vested on the date the divorce petition was filed." *Id.* at 988. Therefore, the court reasoned that because property rights in Kansas are vested from the moment the divorce action is filed, not when judgment is rendered, any assessment would need to be performed before the filing of the divorce action to exist as a lien on property later divested from the liable tax payer. *Id.* at 988-89. The Plaintiff, however, cites no support that Connecticut law treats divorce actions similarly. Conversely, in Connecticut, it is the "entering" of "a decree annulling or dissolving a marriage" that vests the property interests of the parties. Conn. Gen. Stat. § 46b-81(a). Indeed, "[t]he court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either spouse, when in the judgment of the court is it the property mode to carry the decree into effect." *Id.* Furthermore, "[a] conveyance made pursuant to the decree shall *vest* title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court . . . ." *Id.* at 46b-81(b) (emphasis added). Given the language of the statutes, it is clear that Connecticut treats property rights differently than Kansas. Instead of automatically vesting property rights at the time of filing a dissolution action, Connecticut permits the use of prejudgment remedies such as attachment and lis pendens to secure property interests, but, unlike in Kansas, those rights are not perfected until entry of judgment in the action. *Gardner*, therefore, does not stand for the sweeping proposition asserted by the Plaintiff.

22

Moreover, in the second case cited by the Plaintiff, the assessment was made after entry of the divorce decree; so the issues before the court were the interpretation of the provisions in the decree and the application of Idaho's recording statutes, not the timing of the imposition of the liens.  *See Filicetti v. United States*, No. 1:10-cv-00595(EJL), 2012 WL 602717, at *3-4 (D. Idaho Feb. 23, 2010).  In short, the Plaintiff has cited no authority for the proposition that enforcing a federal tax lien would limit or otherwise attack the state's power in dividing marital assets pursuant to dissolution actions.  This Court finds that its role is to determine the state of Smith's interest in the Property at the time of the assessments pursuant to Connecticut law.  Since the divorce judgment was entered after the assessments and since the lien was perfected on Smith's interest in the Property at the moments of assessment, the lien is valid.  Neither subsequent conveyance, even without notice of the lien, nor a prior lis pendens affects its validity.  *See Bess*, 357 U.S. at 57 ("The transfer of property subsequent to the attachment of the lien does not affect the lien, for it is the very nature of the lien, that no matter into whose hands the property goes, it passes *cum onere*.").

### C.  Exceptions Requiring Notice

As discussed above, the relative priority of tax liens is governed by federal law, but where "the priority of a federal tax lien is challenged by a subsequent purchaser and/or the holder of a security interest in the encumbered property . . . the relative priority of the interests is controlled by 26 U.S.C. § 6323."  *McCombs*, 30 F.3d at 321.  26 U.S.C. § 6323(a) provides that a federal tax lien "shall not be

valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof . . . has been filed by the Secretary." Therefore, if the Plaintiff falls into one of the statutory exceptions to the automatic imposition of the lien without prior notice, then the lien is invalid.  The Plaintiff argues that she was a "purchaser" as defined in the statute.  [Dkt. 47-1, p. 10-14].  The Defendant argues, however, that the Plaintiff is not a purchaser, and, therefore, no notice exception applies.  [Dkt. 48-1, p. 11-13].

The term "'purchaser' means any person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6).  The regulations promulgated pursuant to that section describe "adequate and full consideration" as consideration that "bears a relationship to the true value of the interest in property acquired." 26 C.F.R. § 301.6323(h)-1(f)(3).  The regulations further provide that "[a] relinquishment or promised relinquishment of . . . marital rights is not a consideration in money or money's worth." 26 C.F.R. § 301.6323(h)-1(a)(3).  However, courts have held that waivers of certain rights, such as alimony, can constitute adequate consideration. *See United States v. Brynes*, 848 F. Supp. 1096, 1098 (D.R.I. 1994); *Moroch v. United States*, 647 F. Supp. 2d 137, 141 (D. Conn. 2009).  Even so, considering that the statute requires adequate and full consideration, which has been interpreted to require a relationship to the true value of interest in the property acquired, courts "have required that the consideration and property value in this equation be relatively close." *United*

24

*States v. McCombs*, 928 F. Supp. 261, 268 (W.D.N.Y. 1995) (citing *United States v. Carson*, 741 F. Supp. 92, 95 (E.D. Pa. 1990) (taxpayer's daughter did not qualify as a "purchaser" where the $1.00 she gave as consideration for the repurchase of three properties from the taxpayer was not "adequate and full consideration"); *STV Engineers, Inc. v. Ash*, 1986 WL 3862, 57 A.F.T.R.2d at 86–1141, 86–1 U.S.T.C. ¶ 9352 (dictum) (purchase of annuity by transferee from taxpayer was not for "adequate and full consideration" as a matter of law where under transferee's calculation of annuities' value, value of annuity acquired was 25% more than the value of the consideration given); *United States v. Mac Cement Finishing Corp.*, 546 F. Supp. 52, 53 (N.D.N.Y. 1982) (consideration given in the form of cash and an assumption of a mortgage for the acquisition of taxpayer's property that was only forty-five percent of the property's fair market value was not "adequate and full consideration"); *United States v. Paladin*, 539 F. Supp. 100, 103 (W.D.N.Y. 1982) ("[b]ecause the assignment of the insurance proceeds ... was supported by consideration in the amount of only one dollar, it was not supported by adequate and full consideration"); *Dist. Divine Sci. Church of Allen Cnty. v. United States*, 80–1 U.S.T.C. ¶ 9119, 1979 WL 1523 (N.D. Ind. Dec. 4, 1979) (consideration in the form of a mortgage assumption worth $42,794.19 in exchange for a purchase of property worth at least $59,000 was not adequate and full consideration)). Accordingly, this Court must compare the value of the consideration given for the Property and the true value of the Property to see whether they are comparable.

The Plaintiff relies on a case from this district in which the court held that a non-liable third party divorcee was a "purchaser" when she waived past due

25

support payments totaling $166,467 for a ten percent interest in net proceeds from any future sale of real property valued at $1,480,700 that was conveyed to her pursuant to the divorce decree. *Moroch*, 647 F. Supp. 2d at 142.

Here, the Plaintiff alleges that she waived her right to alimony payments in receipt of the Property just as in *Moroch*, so she should be deemed a purchaser. As a preliminary matter, Plaintiff cites no law entitling her to alimony. Instead, she cites the paragraph in the divorce judgment which states that

> [t]he [Plaintiff] shall be responsible only for those liabilities as reflected on her financial affidavit in her name solely.  [Smith] shall be responsible for all debts on his financial affidavit, as well as all debts in his name for which he could be liable, which are not yet reflected as debts on his financial affidavit, particularly those pertaining to taxes.  [Smith] shall hold the [Plaintiff] indemnified and harmless for the debts the court has ordered him liable.  This provision is in lieu of additional spousal support and is intended to be non-dischargeable in bankruptcy.

[Dkt. 47-8, ¶13].  It is true that the judgment provides that Smith will be liable for his debts and that the court took his debts into consideration in determining not to award extra alimony, aside from what was otherwise provided.  However, there is no evidence explaining why the court ruled as it did. In fact, in view of Smith's conduct during the course of the proceeding, the court may have considered an award of extra alimony as futile.

Even assuming Plaintiff was entitled to more alimony and the conveyance was intended to offset that right, the court did not quantify the amount of alimony the conveyance offset. In *Moroch*, the court explicitly compared the amount of past alimony payments due and the value of the interest obtained by the ex-wife,

**26**

finding that "[i]n effect, she exchanged one chose in action worth $166,467 for another worth approximately $148,070.  In doing so, she provided adequate consideration for the conveyance by" the ex-husband.  *Moroch*, 647 F. Supp. 2d at 142.  While the Plaintiff is correct that you need not wait until the support payments are in arrears to waive them in order to become a purchaser, the amount of the waived support or alimony must be definite enough to permit the court to engage in the type of comparison required by the statute and its regulations.  Since the Plaintiff nowhere cited to any specific amount that was waived, it is impossible for the Court to determine if the true value of the Property was comparable to the consideration given.

Furthermore, at issue here is whether the Plaintiff is a purchaser of the Property.  The provision related to divorcing couple's debts was made "in lieu of additional spousal support . . . ."  As related to the Property, the divorce judgment only states that it is conveyed to the Plaintiff, and she shall be responsible for the mortgage; it nowhere states that the Property was conveyed to the Plaintiff in lieu of extra support payments.

The Plaintiff argues that "[o]ne element that the State Court was obligated to consider prior to rendering its financial order was the 'particular debt' to the Plaintiff that arose when Mr. Smith unauthorizedly [sic] took $110,000.00—a 'readily ascertainable dollar value'—from the family's account in violation of automatic orders. . . . As cancellation of the $110,000.00 debt the Court substituted an equivalent in money's worth—the equity in the Property— amounting to $137,000 thus mooting the Plaintiff's need to exercise her legal right

27

to recover those funds." [Dkt. 51, p. 13]. If this claim were substantiated anywhere in the divorce judgment, the Plaintiff could have a strong argument that she is a purchaser as defined in the statute. Unfortunately, the judgment and record presented to this Court in no way corroborate the Plaintiff's claim that the Property was awarded to her as compensation for Smith's fraudulent conveyance. Moreover, as discussed above, it seems that the language of the judgment itself contradicts this reading because the provision related to the Property does not discuss Smith's debts or his fraudulent behavior. Those issues are discussed in the section awarding legal fees and indemnification from his unknown debts. Regardless, the Plaintiff has not provided a definite amount of spousal support that she waived in order to receive Smith's interest in the Property, so the Court is unable to determine if the Property was acquired for adequate and full consideration. Accordingly, she cannot be a purchaser as defined in the statute.

### D. Validity of the 2011 Lien

Even though the Defendant sent "Notice of Federal Tax Lien Filing—Nominee or Alter-Ego" to the Plaintiff in July 2011, the Defendant claims that it "does not suggest that [the Plaintiff] is a nominee or alter ego of Mr. Smith as those terms are defined in law. Moreover, the use of the term 'transferee' on the [notice] does not imply that the government considers the conveyance of the Property to [the Plaintiff] a fraudulent transfer." [Dkt. 48-1, p. 21]. Furthermore, "[t]he 2011 [notice], which identified [the Plaintiff] as a nominee and/or transferee of Mr. Smith, imposed no separate personal liability on [the Plaintiff], nor does the

**28**

United States assert that any other assessment of such liability has been made. Rather, the second [notice], which identified only the liabilities assessed against Mr. Smith on March 3, 2003 and March 10, 2003, was filed purely to provide record notice of the United States' continuing claim to the Property."  [*Id.*].  Accordingly, there is no 2011 lien and no claim made by the Defendant against the Plaintiff as to her individual personal liability aside from that as related to the 2003 lien.

### E.  Foreclosure

Pursuant to 26 U.S.C. § 7403, the United States may enforce tax liens through the forced sale of residential property owned by a party other than the liable taxpayer as long as the non-liable third party is compensated for his or her interest in the property.  *See United States v. Rodgers*, 461 U.S. 677, 680 (1983); *see also Celauro v. U.S. I.R.S.*, 411 F. Supp. 2d 257, 264-65 (E.D.N.Y. 2006) ("After notice and an opportunity to be heard under § 6330, a District Director of the IRS is empowered to collect the assessed tax by levy and sale of all property, or rights to property, of the delinquent person or any property on which there is a lien for payment of tax."), *aff'd sub nom*, 214 F. App'x 95 (2d Cir. 2007); *United States v. Allen*, No. CivB-86-210(WWE), 1989 WL 91137, at *3 (D. Conn. June 12, 1989).  That power, however, is subject to the Court's limited equitable discretion. *Rodgers*, 461 U.S. at 709.  While the policy behind the statute favors the "prompt and certain collection of delinquent taxes," the Supreme Court noted that non-liable third parties may be unfairly harmed by foreclosure on real property and that "financial compensation may not always be a completely adequate substitute for a roof over one's head."  *Id.* at 704 (citing *United States v. 564.54 Acres of*

**29**

*Land*, 441 U.S. 506, 510-13 (1979)).  The Supreme Court provided a non-exhaustive list of factors that district courts should consider in determining whether to order a forced sale of property: (1) the likely financial prejudice to the government if it were unable to sell the entire property to satisfy the judgment; (2) whether the non-liable spouse would normally (without regard to § 7403 or other eminent domain proceedings) have a legally recognized expectation that the property would not be subject to a forced sale by the delinquent taxpayer or his creditors; (3) the likely prejudice to the non-liable party; and (4) the relative character and value of the non-liable and liable interests in the property.  *Id.* at 710-11; *United States v. Anderson*, No. 08-cv-6426(MAT), 2010 WL 5072958, at *2 (W.D.N.Y. Dec. 10, 2010) (citing the same); *see also In re Persky*, 893 F.2d 15, 21 (2d Cir. 1989) (citing *Rogers* as a comparison for factors to consider when weighing detriment to a non-debtor spouse in a bankruptcy proceeding).  Even though these factors should not be used "as a 'mechanical checklist' to the exclusion of common sense and consideration of special circumstances . . ., the limited discretion accorded by § 7403 should be exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes."  *Rodgers*, 461 U.S. at 711.

### i.  Financial Prejudice to the Government

"Courts have held, and common sense dictates, that the sale of a partial interest in property, particularly where the remaining interest is held by someone who resides at the property, will generally yield less than if entire property is sold."  *Anderson*, 2010 WL 5072958, at *3; *United States v. Digiulio*, No. 95-cv-

**30**

219S, 1997 WL 834820, at *15 (W.D.N.Y. Nov. 5, 1997).  The Defendant argues that it will be substantially prejudiced if it were forced to sell only a portion of the Property because a single-family residence is not amenable to partition.  [Dkt. 48-1, p. 24-25].  Indeed, in *Digiulio*, the court noted that residential property "is probably not susceptible to physical partition, nor is it likely that purchasers would be interested in purchasing a half interest in a home to be shared with a current occupant."  *Digiulio*, 1991 WL 834820, at *15; *see also United States v. Bierbrauer*, 936 F.2d 373, 376 (8th Cir. 1991) (finding that since"[t]here is no real prospect that [the tax payer's] interest could be sold separately" when the property was a co-tenancy with a non-liable third party, the first factor weighed in favor of the Government).  However, the court denied summary judgment in *Digiulio* because the Government did not present any evidence showing the extent of the financial prejudice that would result since it failed to provide information related to the property value or how much a partial sale of the residence was expected to produce.  *Id.*  Unlike that case, this Court does have information related to the approximate value of the Property; in 2011, the Defendant's memorandum quoted an appraised value of the Property of $759,200 and cited another quoted value by www.zillow.com of $573,000.  The tax lien initially placed on the Property was for $66,987.63, but the Plaintiff, in 2011, received a notice that the total amount of the lien was $36,390.74.  Either way, sale of the Property should easily satisfy the tax liability and any accrued penalties given the substantial difference in the fair market value of the Property

and the tax liability due, even though the foreclosure sale amount will likely be much lower than the fair market value.

Courts do, however, consider the Government's dilatory conduct in collecting the tax as weighing against the prejudice it will experience.  When addressing the first factor in *United States v. Reid*, the court noted that "the Government is partially to blame for the confusion. After assessing taxes on Reid in 1986, the Government waited until 1996 to bring this action. Delays persisted. The case came to trial only after Reid filed a motion to dismiss the case for want of prosecution. During the intervening fourteen years, the likelihood of collecting Reid's indebtedness has presumably declined because of the Government's own conduct."  *United States v. Reid*, 127 F.Supp.2d 1361, 1382 (S.D. Ga. 2000). Similarly here, the Government assessed the tax on Smith in 2003, but failed to attempt to collect that tax until the Plaintiff brought this quiet title action.  The Defendant even admitted in its 2011 memorandum that the reason no summons was issued at the time of the Property's transfer to determine the exact mortgage balance was "due to the likelihood that this would trigger litigation involving a petition to quash by either David Smith or Dyane Smith."  In the intervening years, Smith's ability to pay the tax declined, such that the Defendant determined that Smith was "uncollectible" in 2011.  Had the Defendant been more diligent in its efforts to collect the liability, the Plaintiff's investment in the property and the amount of penalties incurred would have been substantially less.  Therefore, on balance of these factors, it is clear that the Government's interests would be prejudiced by a partial sale of the residence, but at least part of the blame rests

32

squarely on the Government for its dilatory efforts to collect the tax.  In any event this factor is either neutral or rests slightly in favor of a sale.

### ii.   The Plaintiff's Expectation of Foreclosure

The second *Rodgers* factor is "whether the third party with a non-liable separate interest in the property would, in the normal course of events . . . have a legally recognized expectation that that separate property would not be subject to forced sale by the delinquent taxpayer or his or her creditors."  *Rodgers*, 461 U.S. 710-11.  The Defendant argues that the Plaintiff had no reasonable expectation that the Property would be free from liens against Smith because the divorce judgment did not quash any existing liens or creditor interests, it only provided for indemnification and because the lien was recorded one month after the divorce judgment.  [Dkt. 48-1, p. 25].  In response, the Plaintiff argues that she was not provided notice of the lien at the time of the Judgment.  [Dkt. 47-1, p. 19]. In *Digiulio*, the court held that the non-liable third party had a reasonable expectation that her house could not be seized for her husband's debts when the tax liabilities arose "long after his divorce from Valerie Digiulio, which occurred in 1968, and the partial transfer to his children, which occurred in 1984."  *Digiulio*, 1997 WL 834820, at *17.  Also in *United States v. Jones*, the court ruled that the second factor weighed against foreclosure when the non-liable third party was "the sole owner of the property" which created a "legally legitimate expectation that no other person or entity could disturb her ownership of the property." *United States v. Jones*, 877 F. Supp. 907, 918 (D.N.J. 1995), *aff'd*, 74 F.3d 1228 (3d Cir. 1995); *see also*, *United States v. Johns*, No. 3:05cv308(RVMD), 2006 WL

**33**

3086869, at *5 (N.D. Fla. Oct. 27, 2006) ("Consequently, I find that Ms. Johns had a legally recognized expectation that the property on which she has lived for the past 16 years would not be foreclosed upon in order to satisfy a debt owed by her ex-husband, from whom she has been divorced for 14 years."); c*f. Digiulio*, 1997 WL 834820, at *16 (finding that a third party who had constructive knowledge of a tax lien because the tax returns for the relevant years were filed jointly did not have a legitimate expectation against foreclosure).  Just as in *Digiulio* and *Jones*, the Plaintiff here had no knowledge, either actual or constructive, of the tax liability before entry of the divorce decree because no notice of the lien was provided, and Smith and the Plaintiff filed their taxes for the relevant years separately.  Furthermore, when the Plaintiff refinanced in 2005, the evidence shows that she was still unaware that there was an existing lien on the Property because the title search provided to her showed that her interest was unencumbered.  Starting in 2003, she also was the sole owner of the Property, which was conveyed to her pursuant to a legally binding divorce judgment.  Since she had no knowledge of the existing lien at the time of the divorce judgment and has been the sole owner of the Property for almost eleven years, this Court finds that the Plaintiff had a reasonable expectation that the Property would not be subject to foreclosure based on her ex-husband's tax liabilities.  This factor weighs against a forced sale.

### iii.  Prejudice to the Plaintiff

The third *Rodgers* factor is the prejudice to the non-liable interest holder in terms of personal dislocation costs and under-compensation of interest.

34

*Rodgers*, 461 U.S. at 711.  The Defendant argues that the Plaintiff is only prejudiced by normal relocation expenses which courts have held is insufficient to cause this factor to weigh against foreclosure.  [Dkt. 48-1, p. 25-26].  The Plaintiff argues that she will be substantially prejudiced because she has been living in the home since 1993, has been the sole mortgage payer since 2000, invested over $300,000 in the Property in mortgage payments, maintains an office in the home, and resides there with her son.  [Dkt. 47-1, p. 19-20].  While it is true that courts, including in this district, have held that typical relocation expenses are alone insufficient to cause the factor to weigh in favor of denying foreclosure, we must take into consideration all of the circumstances of the particular case.  In *United States v. Lauer*, the court held that normal relocation expenses for the liable parties wife and minor children were not atypical in any foreclosure proceeding, but the court noted that its equitable powers were particularly strained in that case because the wife and minor children had no ownership interests in the property.  *United States v. Lauer*,  No. 3–06–CV–1724(JCH), 2008 WL 905924, at *4 (D. Conn. March 28, 2008).  In our case, however, the facts are different because the Plaintiff not only has an ownership interest in the Property, she has the *sole* ownership interest.  In a more recent decision, the court found that even though the record was incomplete on the prejudice to the plaintiff factor, the factor was either neutral or weighed slightly against a sale because the plaintiff would need to spend money on relocation expenses and there was a possibility of the plaintiff taking sole ownership of the property after the death of her husband.  *United States v. Cardaci*, No. Civ. 12-5402(JBS/AMD), 2013 WL

**35**

5816823, at *9 (D.N.J. Oct. 29, 2013).  In *United States v. Anderson*, even though the court took into consideration the advanced age of the non-liable party and the fact that she was unemployed and on social security in determining the prejudice to her if forced to sell, the court noted that the non-liable third party also "lived at the Property for over 40 years and has paid for the majority of the costs associated with the Property for the last several years."  *Anderson*, 2010 WL 5072958, at *4.  Here, the Plaintiff has lived in the home for over twenty years and has paid all of the payments related to the mortgage and investments for the last fourteen years.  She also has alleged that her son lives at the home with her, and she maintains her law practice out of her home.  Furthermore, the question of whether she would be undercompensated by a forced sale is also clear.  The debt owed to the government is either $66,987.63 or $36,390.74, as no explanation was provided to the Court explaining why the 2011 notice had a substantially lower lien amount, and the latest value of the home was between $573,000 and $759,200.  Since the debt is at most between 8% and 11.7% of the value of the home, without interest or penalties, it seems unfair to force the sale of the Property in order to pay such a small percentage.  Moreover, the Court again notes that the Defendant's dilatory efforts in collecting the tax liability resulted in continued investment by the Plaintiff in excess of $300,000 in mortgage payments alone.  She should not now lose the extent of that investment, her home, and her office because the Defendant feared a "petition to quash."  *See also Jones*, 877 F. Supp. at 918 ("To dispossess an unemployed individual who has no source of income and who still has a minor son residing with her at her home in order to

36

satisfy a debt owed solely by her husband presents a grossly unfair solution and one that violates New Jersey's policy of protecting the marital home."). Even though the record is not particularly developed on this issue as the Plaintiff has not clearly alleged the exact cost of relocation, we can infer that the costs would be substantial, and the risk of under-compensation by selling the Property in which the Plaintiff made substantial investment at a foreclosure proceeding, which generally produces a value much lower than the fair market worth, to satisfy a debt owed solely by her husband would produce an unfair result. Accordingly, the Plaintiff has alleged more than the typical relocation expenses, and this factor weighs against a forced sale.

### iv.  Relative Character and Value of Smith and the Plaintiff in the Property

The final factor highlighted in *Rodgers* is the "relative character and value of the non-liable and liable interests held in the property . . . ." *Rodgers*, 461 U.S. at 711. The Supreme Court explained that "if, for example, in the case of real property, the third party has no present possessory interest or fee interest in the property, there may be little reason not to allow the sale; if, on the other hand, the third party not only has a possessory interest or fee interest, but that interest is worth 99% of the value of the property, then there might well be virtually no reason to allow the sale to proceed." *Id.* The Defendant argues that this factor weighs in favor of a sale because Smith and the Plaintiff each had a 50% interest in the Property at the time of the assessment. [Dkt. 48-1, p. 27]. The Plaintiff argues that she has paid 100% of the mortgage and property taxes, and

maintained and improved the Property solely since 2000, so this factor weighs in her favor.  [Dkt. 47-1, p. 20-21].

The Defendant seems to interpret the *Rodgers* factor to apply to the interests in the property at the time of the assessment, not when the foreclosure request was brought.  However, that conflicts with the plain language of the decision.  In the Supreme Court's example, it looked to the "present possessory interest" of the parties, not the past possessory interest.   This reading has been confirmed by other courts.  In *Johns*, the court held that the fourth factor weighed heavily against a sale because the non-liable thirty party "has resided in and had possession of the property for the past 16 years."   *Johns*, 2006 WL 3086869, at *7.  Here, there is no debate that the Plaintiff has at present a 100% ownership interest in the Property and Smith has none.  Therefore, this factor weighs heavily against a forced sale.

On balance of the factors, it is clear that the only factor that potentially weighs slightly in favor of foreclosure is the prejudice to the Defendant.  However, given the peculiar aspects of this case, the remaining factors weigh heavily against a forced sale.  In hoping to avoid an unfair result, this Court views it as appropriate to use its limited discretion to avoid ordering foreclosure in this case.

## IV.    Conclusion

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment is DENIED in part and GRANTED in part, and the Defendant's Cross-motion for Summary Judgment is GRANTED in part and DENIED in part.  The 2003 lien attached to the Property and is valid as a matter of law and attached to a valid

38

interest in the Property.  However, the Court refuses to order foreclosure on the Property pursuant to its equitable discretion.  Since default judgment was entered against Smith and there are no other pending claims against any other counterclaim defendants, as they were made parties pursuant to 26 U.S.C. § 7403(b), for the reason that they have, or may claim, an interest in the Property, the case is DISMISSED.  The Court encourages, however, the parties to agree to some form of settlement so that the lien can be removed from the Property.

IT IS SO ORDERED.


_____/s/_____

**Hon. Vanessa L. Bryant**
**United States District Judge**


**Dated at Hartford, Connecticut: March 7, 2014**